UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:09-CV-00023-BR

| | | |
|---|---|---|
| MORRIS & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | ORDER |
| v. | ) | |
| COOLING & APPLIED TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant | ) | |

This matter is before the court on the 30 July 2010 Memorandum and Recommendation ("M&R") of Magistrate Judge David W. Daniel regarding plaintiff Morris & Associates, Inc.'s ("Morris") motion for preliminary injunction. Judge Daniel recommends that injunctive relief be granted in favor of Morris. Defendant Cooling & Applied Techonology, Inc. ("CAT") has filed objections to the M&R. Morris filed a response in opposition, and CAT replied. The court is required to undertake a *de novo* determination of the portions of the M&R to which CAT objects. See 28 U.S.C. § 636(b)(1).

## I. BACKGROUND[1]

The dispute in this action regards Morris's U.S. Patent No. 7,470,173 (the '173 patent), which is entitled "Post Chill Decontamination Tank." The tank is used to treat and reduce the microbial contamination present on freshly slaughtered poultry. Morris contends that CAT has infringed the '173 patent with the manufacture, use, sale, import, and offer of its KillCAT. The KillCAT uses a chill tank system with chemicals to reduce the bacterial contamination of

---

[1]This section largely derives from the M&R's "Statement of the Case," (M&R at 1-4), to which CAT has not lodged any objection.

processed poultry.

Morris filed this action on 22 January 2009. It moved for summary judgment on the issue of infringement of certain claims on 13 January 2010 and filed the instant motion on 3 March 2010. On the Memorandum and Recommendation of Judge Daniel, and without objection from either party, on 20 September 2010 the court allowed Morris's motion for summary judgment, thereby finding as a matter of law that CAT infringed certain claims of the '173 patent.

**II. STANDARD FOR EVALUATING LIKELIHOOD OF SUCCESS ON THE MERITS**

No one disputes that to obtain injunctive relief in its favor, Morris "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). The initial issue here concerns the first factor, the likelihood of success on the merits, and the parties' relative burdens thereunder. Specifically, CAT contends that the magistrate judge misread and misapplied the decision of Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372 (Fed. Cir. 2009), in evaluating whether Morris has shown it will likely withstand CAT's challenge to the validity of the '173 patent. In support of this argument, CAT relies on two statements in the M&R: (1) "[T]he court 'must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid,'" (M&R at 7-8 (quoting Titan Tire, 566 F.3d at 1379)); and (2) "The burden pre-trial is thus on CAT to show that, more likely than not, they will be able to demonstrate by clear and convincing evidence *at trial* the invalidity of the '173 patent," (M&R at 8 (emphasis in original)).

2

In Titan Tire, the court extensively analyzed the requisite showing a patentee must make to be entitled to injunctive relief where the patent's validity is challenged, and that analysis is worth repeating in relevant part here.

> With regard to the first factor– establishing a likelihood of success on the merits– the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent. . . .
> . . . .
> . . . [T]he patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation. Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue.
> If, instead, the alleged infringer responds to the preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial. The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument.
> . . . [A]t this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue.
> . . . .
> . . . [T]he alleged infringer at the preliminary injunction stage does not need to prove invalidity by the "clear and convincing" standard that will be imposed at trial on the merits. . . .
> Thus, when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid. We reiterate that the "clear and convincing" standard regarding the challenger's evidence applies only at trial on the merits, not at the preliminary injunction stage. The fact that, at trial on the merits, the proof of invalidity will require clear and convincing evidence is a

3

> consideration for the judge to take into account in assessing the challenger's case at the preliminary injunction stage; it is not an evidentiary burden to be met preliminarily by the challenger.
>
> If the trial court is persuaded, then it follows that the patentee by definition has not been able to show a likelihood of success at trial on the merits of the validity issue, at least not at this stage. This decision process, which requires the court to assess the potential of a "clear and convincing" showing in the future, but in terms of what is "more likely than not" presently, rests initially in the capable hands and sound judgment of the trial court.
>
> . . . [T]hat process does not change the court's ultimate decision point. As the Supreme Court and this court have made clear, the first factor to be dealt with in the preliminary injunction analysis is the traditional one: has the plaintiff established a likelihood of success on the merits?

Titan Tire, 566 F.3d at 1376, 1377, 1379-80 (citations and footnote omitted).

Given that he clearly considered and weighed the parties' respective evidence and ultimately concluded that Morris "demonstrated the likely infringement of its '173 patent and that it can likely withstand any challenges to the patent's validity," (M&R at 15), the court is not convinced, on the whole, that Judge Daniel improperly shifted the burden to CAT, see Titan Tire, 566 F.3d at 1384 (finding, despite the trial court's statement in the conclusion that the *defendant* had demonstrated a substantial question of validity, trial court applied the correct law "because it accurately set forth the 'likelihood of success' standard and its analysis demonstrated that it considered and weighed both parties' arguments"). CAT's objection on this ground is OVERRULED.

### III. VALIDITY OF THE '173 PATENT

As previously recognized, to establish a likelihood of success on the merits, Morris must demonstrate that it will likely prove infringement and that it will likely succeed at trial on the issue of the '173 patent's validity. Because the court has previously concluded (on Morris's

4

motion for summary judgment) that CAT infringed the '173 patent, only the issue of the patent's validity remains to determine whether Morris has shown a likelihood of success on the merits. CAT challenges the '173 patent by invoking 35 U.S.C. § 102(b)'s "on-sale bar." Under this statute, a person is not entitled to a patent if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). This bar

> "applies when two conditions are satisfied before the critical date. First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting." The latter requirement may be satisfied in at least two ways: "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."

Elan Corp. v. Andrx Pharm., Inc., 366 F.3d 1336, 1340 (Fed. Cir. 2004) (quoting Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67, 67-68 (1998)) (omission in original). The parties agree that the "critical date" for purposes of the on-sale bar is one year prior to Morris's provisional patent application, 13 June 2005. (Pl.'s Mem. Supp. Prelim. Inj. at 10; Def.'s Opp'n Prelim. Inj. at 9.) The parties' on-sale bar arguments center on whether, prior to 13 June 2005, the OzCAT (KillCAT's predecessor) was commercially offered for sale and ready for patenting.[2] If it was, then Morris was not entitled to the '173 patent and the patent is deemed invalid.

Judge Daniel concluded that the 31 May 2005 letter from CAT to Tyson Foods, Inc. ("Tyson Foods") does not constitute a commercial offer for sale. CAT does not object to the law on which Judge Daniel relied in reaching this conclusion. Rather, it contends Judge Daniel

---

[2]CAT contends that each element of Claims 1-2, 5-10, 12, and 17 of the '173 patent was anticipated by the OzCAT prior to 13 June 2005. (Def.'s Opp'n Prelim. Inj. at 9-10.)

failed to adequately weigh all the evidence and he draws improper conclusions based on certain pieces of evidence. The court disagrees. When one considers all the surrounding circumstances, namely the 31 May letter itself, testimony from representatives of CAT and Tyson Foods, and, a 12 July 2005 letter from CAT to Tyson Foods,[3] the conclusion that the 31 May letter is not an offer for sale is supported by the evidence.

Alternatively, Judge Daniel concluded, even if there was a commercial offer for sale prior to 13 June 2005, the OzCAT was not ready for patenting before that date. CAT argues that this conclusion is incorrect because it provided a fully enabled disclosure of the OzCAT at a 22 March 2005 meeting with Tyson Foods.

One can demonstrate that an invention is ready for patenting for purposes of the on-sale bar by proof that an "enabling disclosure" was made before the critical date. Such disclosure is "one that was sufficiently specific to enable . . . a person skilled in the art[] to practice the invention." Robotic Vision Sys., Inc. v. View Eng'g, Inc., 249 F.3d 1307, 1313 (Fed. Cir.), cert. denied, 534 U.S. 1018 (2001). The Federal Circuit has recognized that proof of an oral disclosure may support a finding that an invention is ready for patenting. See id. at 1311-13 (finding district court did not err in concluding that inventor's explanation of invention to a co-worker was sufficiently specific to enable co-worker to understand invention and write the software necessary to implement the invention and thus was an enabling disclosure under the on-sale bar).

---

[3]The court has not considered the fact that Morris obtained the 12 July 2005 letter from a subpoena to Tyson Foods rather than from discovery requests to CAT. (Compare M&R at 12 ("The court is troubled that the Defendant had in its possession a detailed proposal for the OzCAT system, central to this case, and yet did not disclose this document in the normal course of discovery."), with Def.'s Obj. at 9 (Plaintiff did not say, nor could it say, [in its brief] that the document was in Defendant's possession or control.") .)

6

The court agrees with Judge Daniel's assessment that, based on the current record, a sufficiently specific disclosure of the OzCAT was not made on 22 March 2005. Therefore, the court finds that Morris has shown, more likely than not, that it can withstand CAT's challenges to the validity of the '173 patent, and as such, it has shown a likelihood of success on the merits. CAT's objections concerning Judge Daniel's conclusions regarding the on-sale bar are OVERRULED.

### IV. IRREPARABLE HARM TO MORRIS

CAT's final objection pertains to Judge Daniel's conclusion that Morris has sufficiently demonstrated the likelihood of irreparable harm. Judge Daniel emphasized the tight marketplace and unique nature of the equipment and how those factors here influence loss of market share and the development of customer relationships. The court rejects CAT's attempts to minimize this unquantifiable harm and finds these factors show Morris will likely suffer irreparable harm.

CAT also takes issue with the fact that the M&R does not mention Morris's delay between filing suit and moving for a preliminary injunction, a period over one year. Delay is certainly a factor in analyzing irreparable harm. See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("This court has recognized that delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. . . . While the period of delay may not have been enough, standing alone, to demonstrate the absence of irreparable harm, it did not stand alone in this case."). A "good explanation" may excuse a delay in seeking injunctive relief. See id. Morris has offered a plausible reason for waiting to file the instant motion– it was attempting to determine whether and on what bases CAT would dispute infringement and patent validity. The court has

7

considered this delay and the explanation given, along with the factors indicative of irreparable harm, and concludes that Morris has shown it is likely to suffer harm irreparable harm in the absence of preliminary injunctive relief.

## V. CONCLUSION

In sum, CAT's objections to the M&R are OVERRULED. The court ADOPTS the M&R as its own. Morris's motion for preliminary injunction is GRANTED. Morris has previously posted a cash bond in the amount of $75,000 with the Clerk (as recommended by Judge Daniel). CAT is hereby enjoined from making, using, selling, offering to sell, and/or importing its KillCAT pathogen reduction system and product until further order of this court.

This 20 October 2010.

                                        W. Earl Britt
                                        Senior U.S. District Judge